UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF INDIANA
SOUTH BEND DIVISION

| | | |
|---|---|---|
| ROY AUSTIN SMITH, | ) | |
| | ) | |
| Plaintiff, | ) | |
| | ) | |
| vs. | ) | CAUSE NO. 3:07-CV-0207 PS |
| | ) | |
| DAWN BUSS *et al.*, | ) | |
| | ) | |
| Defendants. | ) | |

## OPINION AND ORDER

Roy Smith submitted a complaint under 42 U.S.C. § 1983, alleging that Indiana State Prison officials violated the Eighth Amendment's prohibition against cruel and unusual punishment by placing him in danger and failing to protect him from being attacked by an inmate named Hunter. Although Smith asserts that Hunter attacked him, the report of the incident tells quite a different story; it says that Smith entered Hunter's cell and stabbed Hunter, and that "Hunter exited the cell bleeding from the multiple wounds [he] sustained." (DE #1, Exhibit L). What exactly took place in that cell is not before me today. The only issue is whether Smith exhausted his administrative remedies. For if he did not, the case must come to an end.

The defendants have filed a filed a motion for summary judgment pursuant to Fed R. Civ. P. 56, asserting that Smith has not exhausted his administrative remedies as required by 42 U.S.C. § 1997e(a). Summary judgment is proper "if the pleadings, the discovery and disclosure materials on file, and any affidavits show that there is no genuine issue as to any material fact and that the movant is entitled to a judgment as a matter of law." Fed. R. Civ. P. 56(c). To establish a genuine issue of fact, the non-moving party "must do more than simply show that there is some metaphysical doubt as to the material facts." *Matsushita Elec. Indus. Co. Ltd. v.*

*Zenith Radio Corp.,* 475 U.S. 574, 586 (1986). No genuine issue for trial exists "where the record as a whole could not lead a rational trier of fact to find for the nonmoving party." *Juarez v. Ameritech Mobile Commc'ns, Inc.*, 957 F.2d 317, 322 (7th Cir. 1992) (internal quotations omitted).

Pursuant to 42 U.S.C. § 1997e(a), prisoners must utilize any available prison grievance procedure before they may file a § 1983 claim regarding conditions of confinement. *Booth v. Churner*, 532 U.S. 731, 733-34 (2001); *Perez v. Wisconsin Dept. of Corrections*, 182 F.3d 532, 537 (7th Cir. 1999). Section 1997e "applies to 'all inmate suits, whether they involve general conditions or particular episodes, and whether they allege excessive force or some other wrong.'" *Dixon v. Page*, 291 F.3d 485, 488 (7th Cir. 2002), quoting *Porter v. Nussle*, 534 U.S. 516, 532 (2002).

Although not depriving the courts of subject-matter jurisdiction, the comprehensive administrative exhaustion requirement provides for the dismissal of any case in which an available administrative remedy has not been exhausted. *Massey v. Wheeler*, 221 F.3d 1030, 1034 (7th Cir. 2000). "For a prisoner to exhaust his remedies within the meaning of § 1997e(a), he must 'file complaints and appeals in the place, and at the time, the prison's administrative rules require.'" *Burrell v. Powers,* 431 F.3d. 282, 285 (7th Cir. 2005), quoting *Pozo v. McCaughtry*, 286 F.3d 1022, 1025 (7th Cir. 2002). Exhaustion of administrative remedies is a condition precedent to suit in federal court. *Perez v. Wisconsin Dept. of Corrections*, 182 F.3d at 535. In prisoner cases in which exhaustion has been raised as a defense, issues relating to exhaustion are to be resolved by the court before allowing the case to proceed to a trial on the merits. *Pavey v. Conley*, 544 F.3d 739, 741 (7th Cir. 2008).

In support of their summary judgment motion, the defendants submit the declaration of Indiana State Prison official Lori Cambe, which establishes that the Indiana Department of Correction had a grievance procedure in effect while Smith was housed at the prison, and that the claims he presents in his complaint were grievable. Cambe states in her declaration that the prison's records establish that Smith filed two grievances dealing with the issues he has presented to the court, but he filed his first grievance "six months after the event it described, far outside the time limit of 20 working days set by departmental rule." (DE #22-2 at p. 3). Prison officials denied that grievance as untimely. Smith filed a second grievance dealing with the incident, but that grievance was also "denied because it was filed more than a year after the event it described." (DE #22-2 at p. 4). Cambe states that departmental time limits may be suspended for good cause, but Smith did not show why he had waited six months and a year before filing his grievances and so "the time limits were enforced in both instances." (DE #22-2 at p. 4).

Because the defendants met their initial obligation under Fed. R. Civ. P. 56, the burden fell upon Smith to come forth with evidence sufficient, viewed as fully in his favor as reasonable, that would allow a factfinder to decide in his favor the question of whether he grieved the claims he presents in his complaint. *Celotex Corp. v. Catrett*, 477 U.S. 317, 323 (1986). Smith filed a lengthy response to the defendants' summary judgment motion, containing his own statements under oath, declarations by two other inmates, and documentary evidence.

The fight between Hunter and Smith occurred on November 25, 2005. Smith states in his response to the defendants' summary judgment motion that after the fight with Hunter he was taken to the Special Management Unit where he was denied access to scribe materials and grievance forms. But Smith didn't stay in the Special Management Unit very long. According to

3

Smith's own motion, he was transferred out of the unit on November 29, 2005. (DE #27-2 at p. 9).

Smith provides his own statement and the declarations of Albert Bingham (DE #27, Exhibit B) and Lester Bufkin (DE #27, Exhibit C) for the proposition that it is impossible for prisoners in the Special Management Unit to obtain grievance forms for the first seven days they are in that unit. The court accepts these statements as true, but they are neither here nor there since Smith was only in the unit for four days. This would have left him sixteen days to obtain and fill out the grievance forms once he was taken out of the Special Management Unit.

After being transferred out of the Special Management Unit, he was sent to the NSB pre-segregation unit until December 12, 2005. Smith failed to file a grievance while he was in the NSB pre-segregation unit because he says he was deceived into thinking he could not pursue a grievance. Smith claims he was told criminal charges were being filed against him and that grievances could not be accepted while such charges were pending. Smith points to nothing in the Indiana Department of Corrections regulations to support such an assertion and it's difficult to see why this would have prevented him from filing a grievance in any event.

On December 12, 2005, Smith was placed in the IDU disciplinary segregation unit. Recall that the altercation with Hunter took place on November 25, 2005. So when Smith was moved into IDU, it was still within the 20 day time limit to file grievances. Yet four months went by and Smith did nothing. Smith asserts that while at the IDU segregation unit he discovered that the defendants had "erected barriers" that prevented him from acquiring grievance forms because the unit policy "required plaintiff to request and obtain grievance forms

4

only through the lieutenant who was in charge of the unit from six a.m. to four p.m." (DE #27-2 at p. 11).

Smith is correct in stating that state actors may not impede efforts to pursue grievances. *Lewis v. Washington*, 300 F.3d 829, 834 (7th Cir. 2002). But *Lewis* requires affirmative misconduct on the part of prison officials. *Id.* at 834-35. The IDU Segregation Unit does nothing of the sort. It simply sets reasonable "office hours" of ten hours a day for handing out grievance forms. This is a far cry from the kind of "affirmative misconduct" that the *Lewis* court was describing.

Smith also states that he did, in fact, obtain forms while he was on the IDU Segregation Unit, but that when he attempted to submit them a grievance official returned the forms saying he needed to get the signature of the officer in charge of the unit on the form. This requirement, however, is only a barrier to prisoners submitting a grievance if the prisoner does not bother to do as instructed. And when Smith finally did submit grievances dealing with the incident between himself and Hunter, they were several months too late. What's more, Smith never gave any reason for the delay in submitting the forms. (Cambe declaration, DE #22-2, ¶ 21] ).

Smith attaches several exhibits to his response to summary judgment but none of those exhibits demonstrate that he timely filed a grievance relating to the fight with Hunter. Nor do those exhibits show why the untimely grievances that he did file should be excused. Smith submits four exhibits – G, H, K, and L – which are all entitled "Return of grievance." Each of those exhibits are addressed to Roy Smith, and have deficiencies that Smith needed to cure.

First, Exhibits K and L, both dated April 7, 2006, deal with grievances filed on April 3, 2006. Smith has not submitted the underlying grievances, and it is unclear to the court what the

subject matter of those grievances were. In any event, presuming these are the grievances that Cambe refers to in her affidavit to, they do not help Smith. They were filed way too late. And unless he had a good reason for why they were late – and if he does, he hasn't shared it with the Court – then they were properly denied.

Exhibit G is another grievance filed by Smith but not until January 24, 2008 which was more than two years after the event. The same is true of Exhibit H (dated December 13, 2007), which deals with a grievance filed on December 4, 2007. As with exhibit G, this exhibit deals with a grievance that was filed over two years after the events of November 25, 2005. Smith does not submit the underlying grievances so the subject of these grievances is unclear. It is unlikely that either of them dealt with the fight between Smith and Hunter – and even if they did, Smith had already been told twice by that time that his grievances on that subject were untimely.

In sum, none of the exhibits submitted by Smith undermine the defendants' contention that Smith did not file a timely grievance regarding the events of November 25, 2005, and that he never gave an explanation why the grievances he did file were untimely. I therefore find that Smith failed to file a timely grievance dealing with the events of November 25, 2005, and nothing that he has presented to the Court demonstrates that prison officials somehow prevented him from filing a timely grievance. The grievances that Smith did file were both far beyond the deadline and were rejected because he did not give the grievance officials an explanation of why they were late. Because Smith has not come forth with admissible evidence that he timely grieved the events of November 25, 2005, or that there were valid reasons justifying his failure to file a timely grievance, he has not met his burden of coming forth with evidence sufficient which, if viewed reasonably in his favor, would allow a factfinder to conclude that he exhausted

6

his administrative remedies.

For the foregoing reasons, the court **GRANTS** the defendants' motion for summary judgment (docket #20). The court **DIRECTS** the clerk to enter judgment in favor of the defendants and against the plaintiff.

SO ORDERED.

ENTERED: March 10, 2009

    /s Philip P. Simon
Philip P. Simon, Judge
United States District Court